UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:19 CR 561 SNLJ/SPM |
| GLENN JEFFRIES, | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION AND**
**MEMORANDUM OPINION OF UNITED STATES MAGISTRATE JUDGE**

All pretrial matters in the above-referenced case have been referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). Currently before the Court is Defendant Glenn Jeffries' Motion to Suppress Evidence and Statements (Doc. 54).  Mr. Jeffries is charged in a one count indictment with being a felon in possession of a firearm in violation of 18 U.S.C. §922(g)(1). Jeffries contends a firearm and statements he made to police were the fruit of an unconstitutional seizure and search of his person and should be suppressed. For the reasons set out below, I recommend that Jeffries' motion to suppress be denied.

**BACKGROUND AND PROCEDURAL HISTORY**

Jeffries was indicted on July 18, 2019. On September 18, 2019, he was arrested and appeared for an initial appearance on the same day. On September 27, 2018, Jeffries appeared with counsel and pled not guilty to the indictment. Defense counsel subsequently requested, and was repeatedly granted, additional time to file pretrial motions.

On March 17, 2020, because of the Covid-19 health pandemic, the Chief District Judge entered an Administrative Order continuing all civil and criminal jury trials scheduled to begin before May 31, 2020, and otherwise restricting all in-person proceedings.  The Administrative Order specifically found:

> In criminal cases, . . . the time period of any continuance entered from the date of this Order through May 31, 2020 as a result of this Order shall be excluded under the Speedy Trial Act,

18 U.S.C. § 3161(h)(7)(A), as the Court finds that the ends of justice served by taking that action outweigh the interests of the parties and the public in a speedy trial, given the need to protect the health and safety of defendants, their counsel, prosecutors, court staff, and the public by reducing the number of in-person hearings to the fullest extent possible . . . .

On March 27, 2020, in compliance with the pretrial motion deadlines imposed by the undersigned, Defendant filed a Motion to Suppress Evidence and Statements (Doc. 54). The Government responded to Defendant's motions on April 10, 2020 (Doc. 56). After conferring with the parties, the undersigned scheduled an in-person evidentiary hearing on Jeffries' motion on June 19, 2020. The undersigned held a status conference to discuss defendant's pending pretrial motion and suppression hearing on May 20, 2020 and again on June 17, 2020. *See* Docs. 58, 59 & 63. Following the status conference on June 17th, at the defendant's request, the evidentiary hearing was continued to July 22, 2020. *See* Doc. 64.

However, on July 6, 2020, because of restrictions on in-person hearings due to the ongoing Covid-19 pandemic, the evidentiary hearing was rescheduled to August 11, 2020. On August 7, 2020, at an attorneys-only planning conference, defense counsel made an oral motion to continue the evidentiary hearing. *See* Doc. 71. That motion was granted, and the evidentiary hearing was reset for August 26, 2020. *See* Doc. 73. On August 21, 2020, defense counsel filed a sealed motion requesting that the hearing be continued for thirty days; that motion was granted, and the August 26th setting was vacated. *See* Doc. 76. After conferring with counsel for both parties, the hearing was reset for October 20, 2020. *See* Doc. 79.

On October 20, 2020, the parties appeared as scheduled for an in-person evidentiary hearing. At the evidentiary hearing, the United States offered testimony of St. Louis Metropolitan Police Department Officers Brandon Gubricky and Matthew Greene. The United States also introduced Government Exhibits 1-7B, which consisted of a miranda warning card, a warning and waiver form, a citation issued to Jeffries, several photographs of the seized handgun, ammunition, and magazine. All were admitted into evidence. There were no defense witnesses, but defense counsel elicited testimony from the government's witnesses on cross-examination.

At the close of the evidentiary hearing, the parties requested and were granted time to request a transcript of the hearing and to file post-hearing briefs. The transcript of the evidentiary hearing was filed

on November 9, 2020. (Doc. 88).  Consistent with the scheduling order, Jeffries was ordered to file his post-hearing brief no later than November 16, 2020. *See* Doc. 89. However, defense counsel requested, and was granted, additional time to file a post-hearing brief. Jeffries' post-hearing brief was filed on November 24, 2020. (Doc. 92). The United States then requested, and was granted, additional time to file its post-hearing brief. The United States filed its post-hearing brief on December 29, 2020. Neither party has filed any supplemental briefs. As such, the matter is fully briefed and ready for a ruling.

The undersigned has carefully considered the evidence that was offered and admitted at the evidentiary hearing, including the credibility of the government's witness, and has considered the supplemental evidence offered on behalf of the defendant in his post-hearing brief without objection from the United States.  The undersigned has also considered the arguments of the parties both at the hearing and in their written submissions. Based upon the evidence adduced at the hearing, the oral arguments made on the record, and the written submissions of the parties, the undersigned makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

During the early morning hours of July 6, 2019, Officers Brandon Gubricky and Matthew Greene were on patrol in a marked police car in the Greater Ville neighborhood in St. Louis City.  Shortly before 1:00 a.m., the officers' attention was drawn to a man operating a bicycle northbound in the southbound lanes without a headlight on his bicycle.  Based on training and prior experience, the officers understood it to be a violation of the St. Louis Municipal Code for a bicyclist to be riding his bicycle at night without a front light; to be traveling northbound in a southbound lane; and to fail to keep to the right side of the road.

As a result, Officer Gubricky, who was driving, initiated a traffic stop by pulling his patrol car next to the bicyclist, who turned out to be Jeffries. Officer Gubricky activated the emergency lights on the patrol car and ordered Jefferies to stop by saying "Police stop." Jefferies initially complied with the officers' order and stopped his bicycle but did not completely dismount from the bicycle.  The officers got

out of the car, approached Jefferies, and asked him for his personal information. Officer Gubricky was planning to issue Jefferies a citation for the ordinance violations but before he could do so Jeffries indicated he just wanted to "go home," re-mounted his bicycle, and began to pedal away.

At that point, Officer Greene chased Jeffries on foot, ordering him to stop. After a short chase (approximately 100 feet) Officer Greene caught up to Jeffries and grabbed his right arm. As soon as Officer Green grabbed his right arm, Jeffries stopped pedaling the bicycle. The officers took Jeffries back to the patrol car, searched him, and placed him under arrest for resisting and for the initial headlight violation. The officers searched Jeffries and discovered a Ruger Mark IV pistol, a magazine, and ammunition. The officers seized the firearm and conducted a records check that revealed Jeffries was a convicted felon. Officer Greene issued Jeffries *Miranda* warnings and Jeffries acknowledged the warnings.

While Jeffries was being transported to the police station, he made incriminating statements about the gun. Once at the station, Gubricky issued Jeffries a citation for the ordinance violations and asked Jeffries if he wanted to make a written statement. The officers again issued *Miranda* warnings which Jeffries acknowledged before making a written statement about the gun.

## CONCLUSIONS OF LAW

Jeffries argues that all evidence and statements derived from the bicycle stop and the subsequent search of his person must be suppressed as fruits of an unconstitutional search and seizure. Under the exclusionary rule, evidence obtained in violation of the Fourth Amendment may not be introduced at trial to prove a defendant's guilt. *Elkins v. United States,* 364 U.S. 206, 223-24 (1960) (evidence obtained as the result of an unreasonable search and seizure by state officers cannot be used against defendant in federal court). The purpose of the exclusionary rule is to deter constitutional violations. *See United States v. Leon,* 468 U.S. 897, 906 (1984). The exclusionary rule applies to verbal statements obtained as a result of official misconduct as well as to the more traditional seizure of physical evidence. *United States v. Yousif,* 308 F.3d 820, 832 (8th Cir. 2002) ("Verbal statements obtained as a result of a Fourth Amendment violation are as

much subject to the exclusionary rule as are items of physical evidence discovered during an illegal search."). While Jeffries' position is not entirely clear, he appears to argue that both the initial stop for cycling without a headlight and his subsequent arrest and search were unreasonable and violated the Fourth Amendment.

### A. THE OFFICERS HAD PROBABLE CAUSE TO INITIATE THE BICYCLE STOP

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It is well established that the "[t]emporary detention of individuals during [a traffic stop] by police, even if only for a brief period and for a limited purpose, constitutes a seizure of persons within the meaning of the Fourth Amendment." *United States v. Gunnell,* 775 F.3d 1079, 1083 (8th Cir. 2015) (internal quotation marks omitted) (quoting *Whren v. United States,* 517 U.S. 806, 809-10 (1996)). As such, a traffic stop is "subject to the constitutional imperative that it not be unreasonable under the circumstances." *Whren,* 517 U.S. at 810.

The decision to conduct a traffic stop is generally reasonable where the police have probable cause to believe that a traffic violation has occurred. *Gunnell,* 775 F.3d at 1083. The United States Court of Appeals for the Eighth Circuit has explained that "a traffic violation, no matter how minor, creates probable cause" for a traffic stop. *United States v. Ehrmann*, 421 F.3d 774, 780 (8th Cir. 2005). This rule applies to ordinance violations. *See, e.g., United States v. Harris*, 617 F.3d 977, 979 (8th Cir. 2010) (applying rule to excessive license plate tint). To remain constitutionally reasonable, detention for a traffic violation "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *United States v. Jones*, 269 F.3d 919, 924 (8th Cir. 2001) (quoting *Florida v. Royer,* 460 U.S. 491, 500 (1983)). As such, "once an officer finishes the tasks associated with a traffic stop, the purpose of the traffic stop is complete and further detention . . . would be unreasonable unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify further detention." *Gunnell,* 775 F.3d at 1083-84. "Whether a detention is reasonable is a fact-intensive question which is measured in objective terms by

examining the totality of the circumstances." *Id.* at 1084.

As the foregoing factual findings demonstrate, Officers Gubricky and Greene initiated a traffic stop after they observed Jeffries riding his bicycle in the dark without a front lamp while traveling northbound in a southbound lane. Both officers testified that, at the time they observed Jeffries, they believed he was violating St. Louis City ordinances. Jeffries offered no evidence or argument to refute that testimony. Pursuant to ST. LOUIS CITY MUNICIPAL ORD. 57831 § 1 17.36.070 "Every bicycle when in use at night time shall be equipped with a front-facing lamp (white light) on the front or carried by the rider." ST. LOUIS CITY MUNICIPAL ORD. 57831 § 1 17.36.050 also provides "Every person operating a bicycle upon a roadway shall ride as near to the right side of the roadway as practicable, exercising due care when passing a standing vehicle or one proceeding in the same direction." Based on the officers' description of what they saw when they first observed Jefferies on his bicycle, there was probable cause to effectuate a traffic stop for violations of the St. Louis City lamp ordinance and lane ordinance.

Based on the factual findings, Jeffries was initially seized for Fourth Amendment purposes, when the officers turned on their lights and signaled for him to stop and he complied with their commands by stopping his bicycle. *See Terry v. Ohio,* 392 U.S. 1, 16 (1968) (holding that a seizure occurs when an officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen); *California v. Hodari D.,* 499 U.S. 621, 626 (1991) (seizure occurs when there is either "a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful," or submission to "a show of authority."). The factual findings also establish the initial detention did not last longer than required for the officers to complete the tasks of the stop—in this case, to issue a citation for the lamp and lane ordinance violations. Indeed, after initially submitting to the officers' show of authority, Jeffries remounted his bicycle and started to pedal away even though he was not told he was free to go.

## B. THE OFFICERS HAD PROBABLE CAUSE TO ARREST JEFFRIES FOR RESISTING ARREST

The Supreme Court and the Eighth Circuit have held that unprovoked flight may create a reasonable suspicion in a police officer that criminal activity is afoot and will justify the stop of the suspect. *See Illinois v. Wardlow,* 528 U.S. 119, 124 (2000) (holding that unprovoked flight is an act of evasion that is a relevant factor in determining reasonable suspicion); *see also United States v. Benson*, 686 F.3d 498, 502 (8th Cir. 2012) (holding that when police officers ordered a suspect to stop, the suspect's decision to increase his speed and try to evade the officers contributed to a finding of reasonable suspicion); *see also United States v. Horton*, 611 F.3d 936, 940 (8th Cir. 2010) (holding that reasonable suspicion was justified when officers witnessed the suspect's flight at the sight of police).

In *United States v. Sledge*, the Eighth Circuit held that a defendant who ran away from a police officer who was trying to detain him, "forfeited any Fourth Amendment protection by resisting and running away from the officers, thus creating probable cause to arrest [the defendant] for obstructing a peace officer, in violation of Neb. Rev. Stat. § 28–906(1), and to search [the defendant] incident to that arrest." *United States v. Sledge*, 460 F.3d 963, 966 (8th Cir. 2006). The Nebraska statute relevant in *Sledge* is similar to section 575.150 of the Missouri Revised Statutes (2009), which provides that "A person commits the crime of resisting or interfering with arrest, detention, or stop if, knowing that a law enforcement officer is making an arrest, or attempting to lawfully detain or stop an individual . . . the person: (1) Resists the arrest, stop or detention of such person . . . by fleeing from such officer."

Here, the factual findings demonstrate that, after initially complying with the officers' commands to stop, Jeffries stated "I just want to go home," or words to that effect. Jeffries then remounted his bike and started to pedal away from the officers. The factual findings also demonstrate that Jeffries ignored Officer Greene's commands to stop and failed to stop even when Officer Greene was running behind him. Jeffries has advanced arguments suggesting he was not "resisting arrest" and may have had perfectly reasonable explanations for pedaling away in the midst of a traffic stop (such as he was not aware he was being stopped for a traffic violation and believed he was free to ignore police and go about his business).

However, "because probable cause requires only a probability or substantial chance of criminal activity, rather than an actual showing of criminal activity, the police need not have amassed enough evidence to justify a conviction prior to making a warrantless arrest." *United States v. Mendoza*, 421 F.3d 663, 667 (8th Cir. 2005) (citation omitted), abrogation on other grounds recognized in *Basham v. United States,* 811 F.3d 1026, 1029 (8th Cir. 2016); *see also United States v. Jones*, 535 F.3d 886, 890 (8th Cir. 2008). "Probable cause to make a warrantless arrest exists when, considering all the circumstances, police have trustworthy information that would lead a prudent person to believe that the suspect has committed or is committing a crime." *United States v. Parish*, 606 F.3d 480, 486 (8th Cir. 2010).  In making this determination, "law enforcement officers have substantial latitude in interpreting and drawing inferences from factual circumstances." *United States v. Henderson*, 613 F.3d 1177, 1181 (8th Cir. 2010) (internal quotation marks and citation omitted).

    Here, as observed by the officers, the factual circumstances were that after initially complying with the officers' direction to stop, Jeffries attempted to flee on his bicycle by pedaling away without being told he was free to go. Under the circumstances, it was not unreasonable for the officers to interpret Jeffries' statement and actions as an attempt to flee from a lawful traffic stop in violation of Mo. Rev. Stat. §575.150. *See Freeman v. Adams,* No. 1:12CV86 SNLJ, 2014 WL 1056760, at *10 (E.D. Mo. Mar. 19, 2014) (holding that the officer had probable cause to arrest plaintiff for resisting a lawful investigatory stop by fleeing in violation of Mo. Rev. Stat. § 575.150). Therefore, the officers' pursuit and subsequent seizure of Jeffries did not violate Jeffries' Fourth Amendment rights.

    Officers may conduct a search incident to a lawful arrest without a warrant. *United States v. Perdoma*, 621 F.3d 745, 750 (8th Cir. 2010). Such searches may lawfully extend to "the arrestee's person and the area within his immediate control," that is, "the area into which an arrestee might reach in order to grab a weapon or evidentiary items." *Id*. (quoting *Chimel v. California*, 395 U.S. 757, 763 (1969)). For the reasons set out above, the facts here justified the warrantless arrest. Because Jeffries' arrest was lawful, the search incident to the arrest was also lawful.

### C. OFFICERS DID NOT VIOLATE THE CONSTITUTION IN OBTAINING JEFFRIES' STATEMENTS

Jeffries seeks to suppress his post-arrest statements to police, not on grounds that they were obtained in violation of the Fifth Amendment, but on grounds that they were the fruit of an unconstitutional search and seizure. For the reasons set out above, the seizure and search of Jeffries were not unconstitutional and, thus, cannot be a basis for suppressing Jeffries' post-arrest statements.

In addition, the evidence presented at the hearing demonstrated that Jeffries' custodial statements to police both before and after he arrived at the station, were made after he was advised of his *Miranda* rights. Although "[t]he government bears the burden of persuasion and must prove by a preponderance of the evidence that the challenged statements were voluntary," *United States v. LeBrun,* 363 F.3d 715, 724 (8th Cir. 2004), "[c]ases in which a defendant can make a colorable argument that a self- incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare." *Berkemer v. McCarthy,* 468 U.S. 420, 423 (1984). "The fact that such warnings were given weighs in favor of a voluntariness finding." *United States v. Mendoza,* 85 F.3d 1347, 1350 (8th Cir. 1996).

At the hearing, both officers credibly testified that Jeffries was advised of his *Miranda* rights, first, while being transported to the station and then after arriving at the station. The evidence established that the officers used a waiver of rights form and Jeffries indicated that he understood his rights and signed the form. Other than contending his arrest and subsequent search incident to arrest were unconstitutional, Jeffries has failed to articulate any other legal basis to justify suppression of his voluntarily given statement. Accordingly, Jeffries' motion to suppress his post-arrest statement should be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence and Statements (Doc. 54) be **DENIED.**

The parties are advised that they have fourteen (14) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained. Failure to timely file objections may result in a waiver of the right to appeal questions of fact. *See Thompson v. Nix,* 897 F.2d 356 (8th Cir. 1990).

Trial in this case will be conducted before the **Honorable Stephen R. Clark**. Judge Clark will schedule the trial by separate order at a later date.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 29th day of January, 2021.